UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA

In re:

OMNI ENTERPRISES, INC.,

Debtor(s).

Case No. 15-00076-GS
Chapter 7

# MEMORANDUM ON TRUSTEE'S
# OBJECTION TO AMENDED PROOF OF CLAIM NO. 41

Debtor Omni Enterprises, Inc. ("Omni") borrowed money from creditor Alaska Growth Capital BIDCO, Inc. ("AGC") under two business loan agreements secured by its personal and real property. After Omni filed its chapter 7 bankruptcy petition, AGC timely filed Proof of Claim No. 41 in Omni's case. AGC stated an undersecured debt comprised of a secured and unsecured claim. The estate paid off one of the loans when it sold AGC's collateral. AGC subsequently obtained relief from the automatic stay to foreclose on the deed of trust securing the remaining loan. The foreclosure sale proceeds were insufficient to pay off the remaining balance owed to AGC.

The chapter 7 trustee, Nacole Jipping, now objects to AGC's proof of claim. She argues that any unsecured claim for the remaining deficiency is barred by Alaska's anti-deficiency statute. Her argument is contrary to a longstanding, but seldom referenced local decision. While there is considerable appeal to simply reading the statue to bar AGC's deficiency claim post-foreclosure, upon further examination the issue presented is more nuanced. Alaska does not terminate an undersecured creditor's debt upon

1

foreclosure. Rather, it precludes the creditor from taking further action to recover any deficiency after a nonjudicial foreclosure. But in this instance AGC filed its unsecured claim against Omni's bankruptcy estate *prior* to foreclosure. Under 11 U.S.C. § 502(a), AGC's claim was deemed allowed upon filing, and no further action was required to participate in the bankruptcy estate's distribution to unsecured creditors. Accordingly, the court holds that because AGC timely filed its claim against Omni, the subsequent foreclosure of its secured claim does not preclude it from participating in the distribution from the bankruptcy estate on its unsecured claim. The trustee's objection to AGC's unsecured Claim No. 41 will, therefore, be denied.

## FACTS

Omni filed its chapter 7 petition on March 31, 2015. The case was originally designated as a no asset bankruptcy. Consequently, the court did not set a deadline for filing proofs of claim at that time.

On April 9, 2015, the trustee filed her notice of asset determination in the case, triggering the establishment of a claims deadline. ECF No. 20. The court sent notice to creditors that proofs of claim were to be filed by July 8, 2015. ECF No. 21. Shortly afterwards, the trustee noticed motions to sell a vehicle and three lots located in Big Lake, Alaska (the "Big Lake Property"). *See* ECF Nos. 22-27.

On April 23, 2015, AGC moved for relief from the automatic stay to foreclose its interests in various personal property, as well as real property in Dillingham, Alaska (the "Dillingham Property"). ECF No. 35. The motion explained that Omni had obtained two

2

loans from AGC.  Omni initially entered into a Business Loan Agreement dated March 18, 2011, with AGC to borrow up to $3,150,000.00.  As of Omni's petition date, it owed AGC a total of $2,255,360.75 on this loan.  Omni gave AGC security interests in most of its personal property, and additionally secured this loan with a deed of trust against its Dillingham Property.

Omni entered into a second Business Loan Agreement, dated September 3, 2013, under which it could borrow an additional $365,000.00 from AGC.  This loan also was secured against Omni's personal property.  AGC's motion for relief from stay did not mention any deeds of trust securing the second loan, but in response to the Trustee's motion to sell the Big Lake Property it asserted a lien against that property. The estate recognized AGC's lien and paid off the debt on the second loan from the sale of the Big Lake Property. ECF No. 96.

Roughly a week after approving the sale of the Big Lake Property, the court granted AGC's motion for relief from the automatic stay. ECF No. 72.  AGC then commenced a nonjudicial foreclosure on its deed of trust covering the Dillingham Property.

On June 17, 2015, AGC timely filed Proof of Claim No. 41.  AGC stated a claim in the total amount of $2,582,615.69 for monies loaned.  AGC bifurcated its claim into secured and unsecured components, though it stated only that the value of the collateral was "to be liquidated."  It also stated an unsecured claim for the "full amount of [the] deficiency."

3

The foreclosure sale of the Dillingham Property took place on September 30, 2015, to a third party. The details of the foreclosure sale are lacking. But it is clear that the sale price did not satisfy the first loan balance. On September 1, 2016, AGC amended its proof of claim to state an unsecured claim in the amount of $1,612,687.66, again for monies loaned. AGC did not include any calculation of the claim.

The estate spent much of the next couple of years liquidating its assets, which were primarily comprised of litigation claims. Most of the estate's time was devoted to litigating avoidance claims against First National Bank Alaska ("FNBA"). The estate sought to avoid a prepetition offset for approximately $1.3 million under 11 U.S.C. § 553(b) done within 90 days of the petition. The trustee commenced an adversary proceeding, and this court entered summary judgment in favor of FNBA. On appeal, the United States District Court for the District of Alaska reversed, finding for the estate. The Ninth Circuit affirmed the decision of the District Court in late 2018. The trustee has since recovered from FNBA and begun preparing to make the estate's final distribution.

On January 24, 2019, AGC filed its Motion to Allow Amended Proof of Claim (ECF No. 189) ("Motion to Allow"). At the same time, it also filed a second amended proof of claim in the amount of $2,009,054.72. AGC asserted for the first time a secured interest in the estate's recovery from FNBA in the amount of $1,612,687.66. AGC additionally asserted an unsecured claim for $486,367.06.

The trustee opposed AGC's Motion to Allow, and further objected to the allowance of any unsecured claim for AGC. ECF No. 190. The trustee argued that

4

Alaska's anti-deficiency statute precluded AGC from recovering anything on the balance of its claim after foreclosure of the Dillingham Property. FNBA joined in the Trustee's opposition to AGC's claim of a secured interest in the estate's recovery from FNBA, but it did not take any position as to AGC's unsecured claim. ECF No. 191.

On February 26, 2019, AGC withdrew its Motion to Allow, effectively conceding that it did not have a secured interest in the estate's avoidance claims against FNBA. ECF No. 194. However, briefing and oral argument on the claim objection proceeded. *See* ECF Nos. 193, 195, and 196. As a result, the only matter remaining is whether AGC holds an enforceable unsecured claim against the bankruptcy estate.[1]

## ANALYSIS

The claims allowance process is governed by § 502 of the Bankruptcy Code. A timely filed proof of claim is allowed "unless a party in interest ... objects." 11 U.S.C. § 502(a). If there is an objection to a claim,

> the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

---

[1] There is some confusion in the briefing as to which claim the trustee is actually objecting to. AGC timely filed its original proof of claim listing a liquidated debt comprised of undetermined value for the secured claim which resulted in an undetermined unsecured claim. After its foreclosure of the Dillingham Property, AGC amended its claim to state only its liquidated unsecured claim. As previously discussed, AGC then asserted an additional secured claim in its second amended claim, which was also the subject of a motion to allow leave to file that second amended claim. As AGC has withdrawn the motion for leave to amend its claim, the court considers the withdrawal of the motion to also withdraw the second amended claim. The court, therefore, considers the first amended claim as AGC's current claim subject to the trustee's objection.

5

> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured....

11 U.S.C. § 502(b).

The trustee does not dispute the basis or amount of AGC's deficiency claim. Rather, she argues that Alaska's anti-deficiency statute, AS 34.20.100, bars AGC from recovering any post-foreclosure distribution on its unsecured claim. AS 34.20.100 provides:

> When a sale is made by a trustee under a deed of trust, as authorized by AS 34.20.070 - 34.20.130, no other or further action or proceeding may be taken nor judgment entered against the maker or the surety or guarantor of the maker, on the obligation secured by the deed of trust for a deficiency.

Importantly, AS 34.20.100 "does not operate to extinguish the underlying debt but merely eliminates certain types of remedies against specific classes of debtors."[2] *Fireman's Fund Mortg. Corp. v. Allstate Ins. Corp.,* 838 P.2d 790, 793-94 (Alaska 1992). *See also id.* at 794 ("The statute contemplates the survival of a loan 'obligation' following the sale, but precludes the lender from seeking any 'deficiency' on this obligation from the debtor or from the debtor's guarantor."). Considering the effect of AS 34.20.100 on nonjudicial foreclosures, *Fireman's Fund Mortg. Corp.* explained that "the fact that the *mortgagor's obligation* is discharged does not mean that the underlying debt is

---

[2] This contrasts with other jurisdictions where the applicable state law provides that the foreclosure satisfies, or extinguishes, the underlying debt itself. *See, e.g., In re Harstad,* 136 B.R. 806, 808 (Bankr. D. Minn. 1992) (applying Minn.Stat. § 580.225 (1986), which provided: "The amount received from foreclosure sale under this chapter is *full satisfaction* of the mortgage debt, except as provided in section 582.30." (emphasis added)). California also statutorily terminates deficiency claims under certain circumstances. *See e.g.,* Cal. Code Civ. Proc. §§ 580b (purchase money loan antideficiency statute) and 580d (private power of sale antideficiency).

6

extinguished for all purposes." *Fireman's Fund Mortg.*, 838 P.2d at 794 (emphasis in original). Rather,

> the statute's plain language supports the conclusion that the loan obligation is not completely extinguished as a matter of law at the time of a non-judicial foreclosure sale. The statute contemplates the survival of a loan "obligation" following the sale, but precludes the lender from seeking any "deficiency" on this obligation from the debtor or from the debtor's guarantor.

*Id*.

Thus, in *Hull v. Alaska Fed. Sav. & Loan Ass'n of Juneau*, 658 P.2d 122 (Alaska 1983), the Alaska Supreme Court held that a creditor could retain two pledged savings accounts after it nonjudicially foreclosed its deed of trust. The Court held that application of the accounts to the debts did not run afoul of the statutory prohibition against any "other or further action or proceedings." Rather, it construed that phrase to mean "a form of litigation or some type of in-court proceeding." *Id*. at 125. In reaching its decision, the Court agreed with the superior court's observation that Alaska's anti-deficiency statute applied to "additional *legal* actions or court proceedings," and that no such actions had been brought by the defendants. *Id*. (emphasis in original).

Nor does Alaska impose a "one-action rule" to compel a secured creditor to seek recovery only against its collateral.[3] In *Moening v. Alaska Mut. Bank,* 751 P.2d 5 (Alaska

---

[3] Jurisdictions with a "one action rule" generally "'require a creditor to foreclose on real estate security before suing on the note or, if the creditor sues on the note first, force the creditor to lose its security interest.'" *Idnani v. Serap (In re Serap)*, 2019 WL 1976043, at *3 (B.A.P. 9th Cir. May 2, 2019)*(quoting McDonald v. D.P. Alexander & Las Vegas Blvd., LLC,* 123 P.3d 748, 751 (Nev. 2005)). Within the Ninth Circuit, California, Idaho, Montana, and Nevada, have some variation of a one-action rule. 2 *Law of Real Estate Financing* § 15:12 (last updated Dec. 2019). Under California's one action rule, Cal. Code Civ. Proc. § 726(a), "when a secured creditor sues on the obligation rather than seeking foreclosure of the mortgage or deed of trust, he has made an election of remedies, 'electing the single remedy of a personal action, and

7

1988), the Alaska Supreme Court rejected the debtors' efforts to require their secured creditor to proceed against the collateral rather than by an action on the underlying note. Reviewing the applicable Alaskan statutes governing the rights of creditors secured by deeds of trust against real property, the Court concentrated on a secured creditor's right to bring an action on the debt under AS 09.45.200, which states:

> During or after the pendency of an action for the recovery of a debt secured by a lien mentioned in AS 09.45.170, an action cannot be maintained for the foreclosure of the lien unless judgment is given in that action that the plaintiff recover the debt or a part of it, and an execution issued in the action against the property of the defendant is returned unsatisfied in whole or in part.

*Moening*, 751 P.2d at 8 (*quoting* AS 09.45.200). As Alaska law permits a secured creditor to proceed with an action on the underlying debt before seeking foreclosure, the Court concluded:

> The clear implication of [AS 09.45.200] is that the creditor *may* sue directly on the note without first foreclosing the property. Moreover, if the creditor prevails in the legal action and cannot satisfy the judgment against the debtor's personal property, it may then maintain an action for judicial foreclosure of the security.

*Id*. (emphasis in original).

---

thereby waiv[ing] his right to foreclose on the security or to sell the security under a power of sale.'" *Prestige Ltd. P'ship-Concord v. E. Bay Car Wash Partners (In re Prestige Ltd. P'ship-Concord),* 234 F.3d 1108, 1114 (9th Cir. 2000)(citing *Prestige Ltd. Partnership–Concord v. E. Bay Car Wash Partners (In re Prestige Ltd. Partnership–Concord),* 205 B.R. 427, 434 (Bankr. N.D. Cal. 1997)).

8

The Court then considered the impact of AS 34.20.100, but held that a secured creditor may nonetheless seek recovery through a personal judgment prior to initiating a nonjudicial foreclosure:

> The anti-deficiency statute prohibits a deficiency judgment following exercise of a power of sale; however, it does not preclude the exercise of a power of sale following a judgment on the note.... Under the common law, a prior suit on the note does not preclude subsequent judicial or nonjudicial foreclosure of the security. The doctrine of election of remedies does not apply, because foreclosure and a suit on the note are not inconsistent remedies.
>
> We conclude that the statutes permit a secured creditor initially to ignore the security and sue on the note. Once the creditor obtains a personal judgment which is returned unsatisfied in whole or in part, the creditor may judicially or nonjudicially foreclose the security.

*Id*. (internal citations omitted).

Not much case law has developed addressing the application of AS 34.20.100 to creditors' claims in bankruptcy. That said, the Honorable Donald MacDonald IV squarely addressed the issue in *In re Allard*, 1 A.B.R. 47 (Bankr. D. Alaska 1990). There, Goldome Realty Credit Corporation ("Goldome") was the sole unsecured creditor of the bankruptcy estate. As of the bankruptcy filing, Goldome was owed roughly $133,000.00, secured by a deed of trust against real property owned by the debtor. The court noted that Goldome had both secured and unsecured claims as of the petition date. *Id*. Goldome obtained relief from stay and conducted a foreclosure sale at which the property sold for $83,000.00. Goldome submitted an unsecured claim for $50,000.00. *Id*. When the

9

chapter 7 trustee sought court approval to pay Goldome's deficiency claim in its final account, the court raised the application of AS 34.20.100 sua sponte.

Judge MacDonald held that despite the prohibition against any post-foreclosure action imposed by AS 34.20.100, a creditor was entitled to payment on its unsecured claim after a postpetition non-judicial foreclosure. He reasoned:

> While it is indeed ironic that a secured creditor will receive more in bankruptcy than it would at state law, such a result is compelled by the language of the federal statutes. Even though there is explicit state authority forbidding a deficiency judgment after a foreclosure, and even though the creditor has non-judicially foreclosed post-petition, federal law controls the date of establishment of claims. Federal law supersedes any inconsistent provisions of state law pursuant to the supremacy clause of Art. 6, [§] 2 of the Constitution. The controlling date for determination of the amount of the unsecured claim is the date of the filing of the petition. The fact that the creditor later exercised its right to nonjudicial foreclosure is irrelevant.

*Id.* at 49.

Judge MacDonald pointed out, however, that under AS 34.20.100, there would be no right to a deficiency claim in bankruptcy if a secured creditor conducted a non-judicial foreclosure prepetition. *Id*. at 50. He also cautioned that his sua sponte decision on this un-briefed issue "could easily be overruled" in light of the "paucity of authority in the area." *Id*.

The trustee notes that the lone bankruptcy citation in *Allard* is to *In re Hougland,* 886 F.2d 1182 (9th Cir. 1989), a chapter 13 case in which the Ninth Circuit allowed the debtor to strip down a deed of trust claim into a secured and unsecured claim within his

10

chapter 13 plan. As correctly noted by the trustee, in *Nobelman v. Am. Sav. Bank*, 508 U.S. 324 (1993) the Supreme Court overruled such lien stripping of deeds of trust against their residences by debtors through chapter 13 plans. *See also Dewsnup v. Timm,* 502 U.S. 410 (1992) (chapter 7 debtor could not strip down deed of trust). The trustee appears to contend that when the Supreme Court overruled *Hougland* in *Nobelman*, it necessarily overruled *Allard* as well. The court disagrees.

*Allard* reasoned that the creditor held both a secured and unsecured claim as of the petition date, and that § 506 permitted the bifurcation of the debt into those separate portions. *Allard*, 1 A.B.R. at 49. Section 506(a) specifically provides that a secured creditor has a secured claim only "to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a). An undersecured creditor has "an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." *Id*. In *Assoc. Commercial Corp. v. Rash*, 520 U.S. 953, 961 (1997), the Supreme Court explained that this provision "tells us that a secured creditor's claim is to be divided into secured and unsecured portions, with the secured portion of the claim limited to the value of the collateral." *See also Nobelman*, 508 U.S. at 328 ("Petitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim."). This is exactly what was done in *Allard*, and what is to be done here. The current matter involves a claim

11

allowance within the chapter 7 estate, not an effort by a debtor to strip down a deed of trust.[4]

Instead, the court finds the reasoning in *In re Ricks*, 2010 WL 4257598 (Bankr. D. Idaho 2010) to be persuasive. There, the Idaho bankruptcy court addressed the chapter 7 debtor's claim objection to his secured creditor's bifurcated proof of claim. The creditor in *Ricks* was secured by a deed of trust against two parcels of real property. *Id*. at *1. The creditor filed a total claim for $1,162,847.98. The creditor listed its secured claim at $990,000.00, and the remaining balance of $175,858.19 as unsecured. *Id.* The debtor objected to the unsecured claim arguing that "before any unsecured claim may be asserted in relation to a debt secured by real property, Idaho law requires completion of a state court deficiency action." *Id*. The court explained that Idaho law provides for a deficiency judgment upon the satisfaction of certain conditions, including the commencement of an action within three months of the foreclosure. *Id*. at *4 (citing Idaho Code § 45-1512). But no foreclosure had occurred as of the filing of the debtor's bankruptcy case. *Id.*

Relying upon § 502(b) of the Bankruptcy Code, the court held that the petition date served as the applicable date to determine the amount of the creditor's bifurcated claim. The court reasoned:

---

[4] Of course, not all lien stripping as a result of the valuation of the secured claim is prohibited. *See Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1223 (9th Cir. 2002) (permitting lien stripping in chapter 13 of wholly unsecured deed of trust against debtor's residence); *Enewally v. Washington Mut. Bank (In re Enewally)*, 368 F.3d 1165, 1172 (9th Cir. 2004) ("[L]ien stripping on debts secured by real property that is not the debtor's primary residence is permissible in Chapter 13, even after *Nobelman*.") . Indeed, the point Judge MacDonald sought to make when citing to *Hougland* in *Allard* was that "[i]f a debtor can receive the benefit of bifurcation, he should also face any burden it may impose." *Allard*, 1 ABR at 50. The court's reasoning depended upon § 506(a), not the availability of lien stripping.

12

> Here, when Debtor's bankruptcy petition was filed, there had been no foreclosure sale on Creditor's deed of trust on the Property, no deficiency action, and no determination by the state court that any portion of the claim was unenforceable. Simply put, in this case, Idaho's deficiency statute did not render Creditor's claim unenforceable as of the date of Debtor's petition because none of the prerequisites for a deficiency determination had occurred at that time.

*Id*. at *4.

Because applicable state law did not preclude the creditor's claim when filed, the court determined that the claim was "allowed" for purposes of § 502(b). It then proceeded to bifurcate the claim under § 506(a):

> Section 506(a) bifurcation is allowed in chapter 7 cases, and creditors are not required to first obtain a non-bankruptcy deficiency judgment in order to bifurcate a claim into secured and unsecured parts. § 103(a) (providing that the provisions of chapter 5 of the Code apply in cases under chapter 7); *Dewsnup v. Timm*, 502 U.S. 410, 413 (1992) (recognizing that § 506(a) bifurcation may occur in a chapter 7 case); *see, e.g., In re Gangestad*, 358 B.R. 394, 396 (Bankr. D. Or. 2006) (quoting *In re Costello*, 184 B.R. 166, 171 (Bankr. M.D. Fla. 1995)) ("[In] a Chapter 7 case, '[t]here is no requirement that the creditor first obtain a deficiency judgment in the non-bankruptcy forum as a prerequisite for bifurcating a claim into a secured and unsecured part.'"). Creditor's bifurcation of its claim into secured and unsecured claims was, therefore, appropriate.

*Id*.

The analysis in *Ricks* is equally applicable here. As of the petition date, AGC held a valid undersecured claim against Omni. AGC timely filed its proof of claim against the bankruptcy estate. The trustee has not identified any reason under Alaska law why the claim was not valid as of Omni's petition date, or when filed.

Both parties direct the court's attention to *Pierce v. Carson (In re Rader)*, 488 B.R. 406 (B.A.P. 9th Cir. 2013), where a secured creditor sought relief from the automatic stay in the debtor's chapter 7 bankruptcy to conduct a non-judicial foreclosure sale of Arizona real property. After obtaining relief from stay, but before conducting the foreclosure sale, the creditor timely filed its proof of claim in the bankruptcy court. Based upon its valuation of the collateral, the creditor listed its secured claim at $370,000.00, and an unsecured claim for $369,100.61. *Id*. at 409. The secured creditor subsequently purchased the property at foreclosure for $370,000.00. *Id.* The trustee objected to the creditor's remaining unsecured claim, arguing that it was barred under Arizona's anti-deficiency statute.

Specifically, A.R.S. § 33-814(A) provides that "within ninety days after the date of sale of trust property under a trust deed pursuant to § 33–807, an action may be maintained to recover a deficiency judgment against any person directly, indirectly or contingently liable on the contract for which the trust deed was given as security...." A.R.S. § 33–814(D) further provides that if no deficiency action is filed within the ninety-day period, "the proceeds of the sale, regardless of amount, shall be deemed to be in full satisfaction of the obligation and no right to recover a deficiency in any action shall exist." In *Rader*, the creditor did not institute a deficiency action within ninety days, thereby prompting the trustee to object to the allowance of the creditor's unsecured deficiency claim. *Rader*, 488 B.R. at 409-10. The bankruptcy court overruled the trustee's claim objection, and the Bankruptcy Appellate Panel for the Ninth Circuit (BAP)

14

affirmed. The BAP explained that the creditor did not obtain relief from the automatic stay to pursue a deficiency action, and therefore, was prohibited from proceeding with any such action within the 90-day period under Arizona law. *Id.* at 412-13. Additionally, after debtor received her discharge, the discharge injunction permanently prohibited the creditor from pursuing a deficiency action. *Id.* at 415. The BAP therefore concluded that Arizona state law was preempted by the Bankruptcy Code, thereby obviating the creditor's obligation to comply with applicable Arizona law:

> [T]he automatic stay and the discharge injunction acted as a legal bar to the [creditors] doing what A.R.S. § 33-814 required them to do. Thus, the Bankruptcy Code and A.R.S. § 33-814 are in conflict and the state law must yield. As a result, the [creditors] were not required to comply with A.R.S. § 33-814.

*Id.* (citations omitted). The BAP further reasoned that "[r]equiring the [creditors] to file a deficiency action pursuant to A.R.S. § 33-814 would also be contrary to the Bankruptcy Code's framework for determining the secured and unsecured status of claims" pursuant to 11 U.S.C. § 506(a). *Id.* at 417.

The trustee distinguishes the allowance of the undersecured creditor's unsecured claim in *Rader* on the basis that unlike Arizona, Alaska does not permit an action for a deficiency judgment.[5] She also argues that there is "no federal interest that requires that [a] deed of trust holder, who forecloses post-petition, be entitled to an unsecured

---

[5] AGC argues that the automatic stay precluded it from obtaining a deficiency judgment just as the stay precluded the creditor in *Rader* from timely pursuing a deficiency. Here, it was AGC's decision to obtain relief from stay and subsequently pursue nonjudicial foreclosure that precluded any further action on the debt. Once AGC conducted the nonjudicial foreclosure, it was precluded from taking any further action to collect on the underlying debt pursuant to AS 34.20.100 regardless of the automatic stay. *See generally Citizens Bank of Americus v. Wiggins,* 167 B.R. 992, 994 (M.D. Ga. 1994).

15

deficiency claim, where that same creditor would have had no such deficiency claim outside of bankruptcy." ECF No. 196 at 5. The court does not dispute this general statement. Indeed, the legislative history of § 502(b)(1) appears to support the trustee's view. The legislative history explains that the section was "intended to result in the disallowance of any claim for deficiency by an undersecured creditor on a nonrecourse loan or under a [s]tate antideficiency law ... since neither the debtor personally, nor the property of the debtor is liable for such a deficiency." 124 Cong. Rec. H 11093-94 (Sept. 28, 1978). But, the trustee's arguments are misplaced. AGC filed its proof of claim for the total, undersecured debt *prior* to conducting its nonjudicial foreclosure. It has not brought any action after the foreclosure.

AS 34.20.100 precludes only post-foreclosure collection activity. As recognized in *Moening*, AS 34.20.100 does not preclude collection activity that transpires prior to the nonjudicial foreclosure. Here, AGC did not conduct its nonjudicial foreclosure during the prepetition period. Therefore, it had a valid claim for the full amount owed as of the petition date. As an undersecured creditor, AGC stated both an unsecured claim as well as a secured claim. As to the unsecured component of its proof of claim, AGC sought to be paid from the estate's unencumbered assets generally, akin to the pre-foreclosure action and judgment on the note allowed in *Moening*. Alaska recognizes such actions are not inconsistent with AGC's ability to subsequently pursue a non-judicial foreclosure. Indeed, but for AGC's postpetition nonjudicial foreclosure, there would be no basis for any objection to its unsecured claim and it would participate in the distribution to

16

unsecured creditors, while retaining its secured claim. *See generally Ricks,* 2010 WL 4257598 at *3 ("Here, neither the loan agreement between the parties, nor applicable law, render any portion of Creditor's claim unenforceable against Debtor.").

And this is where Omni's bankruptcy does come into play. While state law controls AGC's substantive rights against Omni, the Bankruptcy Code and Federal Rules of Bankruptcy Procedure fixed the time and procedures for filing and determining AGC's claim against the bankruptcy estate. 11 U.S.C. §§ 502(a) and (b), Fed. R. Bankr. P. 3001-3007. As Judge MacDonald noted in *Allard*, "even though the creditor has non-judicially foreclosed post-petition, federal law controls the date of establishment of claims." *Allard*, 1 ABR at 49. Consistent with Alaska case law, this lead Judge MacDonald to conclude that "[t]he fact that the creditor later exercised its right to nonjudicial foreclosure is irrelevant." *Id*. Under Alaska law, the postpetition nonjudicial foreclosure simply liquidated the creditor's secured claim. Because Alaska law does not extinguish the underlying debt upon foreclosure it did not affect a previously-filed unsecured claim that is otherwise unobjectionable. That AGC may collect on its previously-filed unsecured claim after a nonjudicial foreclosure does not offend Alaska's anti-deficiency statute. As established in *Hull*, an additional recovery on a debt after a nonjudicial foreclosure is not barred by AS 34.20.100 where there is no post-foreclosure action taken to achieve that recovery.

Perhaps the trustee argues that the filing of a bankruptcy claim is not the equivalent of suing on the note and returning a partially satisfied judgment as alluded to

17

in *Moening*. But the filing of a proof of claim has been held to constitute an action for purposes of triggering an anti-deficiency statute. *See Wiggins*, 167 B.R. at 994 (filing of proof of claim after postpetition nonjudicial foreclosure was an action precluded by Georgia's anti-deficiency statute). It follows that filing a proof of claim after a nonjudicial foreclosure is an action barred under AS 34.20.100. But there is no logical basis to distinguish between the nature of a claim filed before or after a foreclosure; the filing of a claim is an action to recover on the debt. Regardless of when filed, it is an attempt to collect from the estate.

Moreover, such an argument is inconsistent with *Rader*. There, the court allowed an unsecured claim for a deficiency under Arizona law where the automatic stay precluded further action by the creditor. As noted in both *Allard* and *Ricks,* this result is compelled by § 502(b), which requires that upon an objection to a proof of claim, the court "shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition." 11 U.S.C. § 502(b). This is because "[a]s of the petition date, the estate is created and creditors' rights are fixed as much as possible."[6] *BAC Home Loans Servicing, LP v. Abdelgadir (In re Abdelgadir)*, 455 B.R. 896, 901 (B.A.P. 9th Cir. 2011)(footnote omitted). As the Second Circuit stated in *Cadle Co. v. Mangan (In re Flanagan),* 503 F.3d 171, 179 (2d Cir. 2007): "A plain reading of

---

[6] *See also In re Ricks*, 2010 WL 4257598, at *4 ("Section 502(b)(1) requires a determination of the allowance and amount of a claim 'as of the date of the filing of the petition.'"); *In re Sanger-Morales*, 2015 WL 9984974, at *4 (Bankr. D. Or. Oct. 21, 2015) ("Under § 502(b), the amounts and allowance of claims are determined 'as of the date of the filing of the petition.'"); *Muir v. Sallie Mae Servicing Corp. (In re Muir),* 239 B.R. 213, 219 (Bankr. D. Mont. 1999) ("This section [§ 502(b)] makes it clear that the petition date establishes the right to allowance of a claim.").

[§ 502(b)] thus suggests that the bankruptcy court should determine whether a creditor's claim is enforceable against the debtor as of the date the bankruptcy petition was filed."

As of the petition date, AGC held an undersecured claim against Omni. AGC timely filed Proof of Claim No. 41 asserting an undersecured debt prior to commencing its nonjudicial foreclosure. The trustee has not argued any basis for disallowance of the unsecured debt apart from the subsequent nonjudicial foreclosure. However, Alaska law did not preclude the filing of AGC's claim ahead of the foreclosure. Moreover, the foreclosure did not violate AS 34.20.100 because no additional action is required for AGC to collect on its unsecured proof of claim. Thus, AGC's liquidation of the secured component of its claim did not extinguish the unsecured balance under Alaska law. There being no valid basis to conclude that the previously-filed proof of claim is unenforceable under Alaska law, the trustee's objection under § 502(b)(1) to AGC's Proof of Claim No. 41 must be denied.

The court shall prepare a separate order to this effect.

DATED: March 31, 2020

BY THE COURT

/s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  Debtor
        M. Jungreis, Esq.
        C. Christianson, Esq.
        N. Jipping, Trustee
        U.S. Trustee
        ECF Participants via NEF
        Case Manager